### CASE No. 1028.

### REEDER & DAVIS v. DARGAN.

1. A mortgagor died in possession of the mortgaged land, which continued in possession of his widow and son, as his heirs-at-law, until sale under foreclosure of two mortgages, the older of which was assigned for value to the widow after her husband's death, and received all of the proceeds of sale.

The junior mortgagees, by amended complaint served some time before the sale, demanded an accounting by the widow for rents and profits, without allegations that the land was insufficient to pay this mortgage, or that the mortgagor was insolvent, and without prayer for the appointment of a receiver or other like relief. *Held*, that this demand for rents and profits could not be sustained.

2. The difference between a mortgage at common law and under the act of 1791 (5 *Stat.* 170), stated.

Before Hudson, J., Darlington, March, 1880.

Hon. A. P. Aldrich, judge of the Second Circuit, sat in the place of Mr. Associate Justice McIver, who had been of counsel.

The case is stated in the opinion, and other facts will be found in the Circuit decree.

The amended complaint was as follows:

" The plaintiffs, by way of further amendment to their complaint herein, by permission of the court, allege—

" That the defendant, Ann D. Flinn, has remained in possession of the mortgaged premises described in the complaint since the death of her husband, H. K. W. Flinn, early in the year 1872, and has received the rents and profits therefor and applied them to her own use and behoof, and has also permitted the turpentine trees to be boxed and used for the making of turpentine, stave timbers and small wood to be cut for the making of hoops and staves, and has received and applied to her own use the rents, incomes and profits arising therefrom. And plaintiffs allege that said defendant is responsible to them as mortgagees for all such rents, profits and incomes since the death of the mortgagor, the said Henry K. W. Flinn.

" Wherefore plaintiffs demand judgment that the said Ann D. Flinn do account for said rents, profits and incomes, and for the costs hereof."

The answer admitted the facts stated, but alleged that the possession was retained and the acts done as heir-at-law of her husband, and denied accountability for rents and profits. She further alleged that she was not the mortgagor, and had never been the tenant of the mortgagor.

The Circuit decree was as follows:

The history and character of the main contention in this action

is fully set forth in the case as reported in 6 *S. C.* 216, and a new recital is unnecessary here. Under that judgment all questions are put at rest except the right of Ann D. Flinn, widow of H. K. W. Flinn, to dower in the mortgaged premises, and the question of her liability for rents and profits.

By a subsequent decree of the Circuit Court, her right to dower has been adjudged to her, an assignment made, and the mortgaged premises sold under a decree or order conformable to the judgment of the Supreme Court. The only remaining question to be adjudged is that of her liability to account to the plaintiffs for the rents and profits of the mortgaged premises.

To sustain this claim much stress is laid by plaintiffs' counsel upon the fact that, pending the suit to foreclose this mortgage, Ann D. Flinn, during the life of her husband and subsequent to his death, claimed the lands adversely to the plaintiffs' mortgage. In this claim her husband acquiesced, and, to support it, had executed a declaration of trust in favor of his wife. It is insisted that by this course of conduct, H. K. W. Flinn became a mortgagor out of possession; and that being such, the fee vested in the plaintiffs under the proviso of the act of 1791; and that the mortgage thenceforth became as a mortgage at common law, conferring upon the mortgagees the right of possession, and the right to sue for the rents and profits.

To this it is sufficient reply to say that during the lifetime of H. K. W. Flinn, he remained in undisturbed possession of the mortgaged premises, and, after his death, his widow and child continued in possession until sale made under judgment of foreclosure. They were thus actually in possession, and cannot be said to have been ever constructively out of possession.

The claim of the wife to a title paramount to that of the mortgagor, her husband, and to the right of the mortgagees, does not and cannot change the fact of actual possession and occupancy. This remained in Flinn until death, and continued in his heirs-at-law until sale made. The claim of Mrs. Flinn was decreed invalid by the Supreme Court, and the land was sold as the property of her husband. In answer to the claim for rents and profits, Mrs. Flinn admits that she received the same, but alleges that she did so as heir-at-law of her husband, and is not account-

able to plaintiffs therefor. And upon this issue thus presented, we think the decision of the question must turn, regarding the mortgage, not as one at common law, but the usual statute mortgage under the act of 1791, a mere security for the debt.

Under this view we are to answer this question : Has a mortgagee, after condition broken, and pending action to foreclose, a right to demand of the mortgagor or his heirs-at-law compensation for their use and occupation, or rents and profits ?

In England, and those of the United States which retain her law of mortgages, the mortgagee could, under proper proceedings and sufficient allegations pending foreclosure, obtain the appointment of a receiver empowered to collect of tenants the rents and profits of mortgaged premises to be accounted for at the termination of the suit. But even under that law, if the mortgagee suffered a decree of foreclosure and a sale to be had without this precaution, his remedy was gone.

Much of the learning appertaining to the law of mortgages, and the relative right of mortgagor and mortgagee, and especially relating to rents and profits, found in text books and judicial decisions, is inapplicable to mortgages in this state, because the nature and legal effect of the conveyance is radically changed by statute. A mortgage with us is a mere security for debt, and the mortgagee is, as against the mortgagor or his heirs in possession, never entitled to possession upon forfeiture, but only by becoming a purchaser at a foreclosure sale. The right to possession and entry is, under the common law, the foundation of the claim to rents and profits.

This fundamental basis of the claim does not and cannot exist under our statute, which gives the right to the use and occupation, rents and profits, to the mortgagor, in whom remains the legal estate, and to the mortgagee is given the right to the money and interest. Yet under our law a case may arise where a mortgagee might subject the rents and profits to the payment of his debts. For example, if the premises be actually let to rent by the mortgagor, and the plaintiff allege that the land is inadequate for the payment of his debt, upon a proper showing made, he might have a receiver appointed to collect the rent from the tenants; but it will be difficult to find a single case in which it

is held that a mortgagee has been allowed in his foreclosure action to demand against a mortgagor in possession an account for rents and profits, and to recover judgment therefor after foreclosure and sale.

This would be equivalent to a recovery for use and occupation against the mortgagor, which use and occupation is guaranteed to him by our law, unless otherwise stipulated for in the instrument of conveyance. Until sale made, the land and usufruct is the property of the mortgagor, whilst the debt and interest belong to the mortgagee.

In the present case the mortgage has been foreclosed and the land sold; the rents and profits, if any, have been received by the heir-at-law, Mrs. Flinn, whilst the plaintiffs omitted to make the proper allegations in the complaint upon which to found a rightful claim to rents, and failed also to take proper steps to arrest the payment of rents by the tenants to their landlord. Under this state of things we do not think a judgment can go against the widow, Ann D. Flinn, for the value of the rents. She is not accountable.

We think we are fully supported in this view of the law by the doctrine of Mathews *v.* Preston, reported in note to *Boyce* v. *Boyce,* 6 *Rich. Eq.* 307; and by the law as laid down in *Jones on Mort., vol. I.,* §§ 669, 670. This judgment might be enlarged by copious extracts from these authorities, but we deem it sufficient to point to the source of doctrine. We deem these authorities conclusive of the question.

It is therefore adjudged that Mrs. Ann D. Flinn is not accountable to the plaintiffs for the use and occupation, rents and profits of the mortgaged premises; and that this cause of action in the complaint be dismissed.

Plaintiffs appealed.

*Mr. B. W. Edwards,* for appellant.

1. From the time of the execution of the trust by H. K. W. Flinn in favor of his wife, Ann D. Flinn, she held adversely to the title of the mortgagee; and the issue raised in her answer was that of adverse title and adverse possession. And the plaintiffs having prevailed in the issue, are entitled to recover rents and

profits. 1 *Jones on Mort.*, § 710; 1 *Strob. Eq.* 354, 355; 5 *Rich. Eq.* 268.

2. When Flinn declared himself in possession of the mortgaged premises as his wife's separate estate, by the solemn formalities of a deed, he declared himself out of possession as mortgagor, and holding as tenant of the trust estate; and Mrs. Flinn, holding the possession after his death under the adverse claim, was liable to suit for the possession by the mortgagees, and also for rents and profits. 1 *Jones on Mort.*, § 672; 1 *Hill's Ch.* 497, 499; 11 *Rich.* 686; *Rice's Eq.* 387; 2 *S. C.* 483.

And though at law this principle only enures to the benefit of the first mortgagee, yet, while she held adversely to all the mortgagees, the plaintiffs have a right, in equity, to demand rents and profits in payment of the first mortgage for the relief of the land, which was the only source from which they could receive payment. 6 *Rich. Eq.* 307, 321–2.

3. After Ann D. Flinn became the purchaser of the Edwards mortgage, she was a mortgagee in possession, and had a right to rents and profits in extinguishment of her mortgage; and, having two funds from which she could satisfy her mortgage, plaintiffs could require her first to resort to the rents and profits in relief of the lands. 1 *Hill. on Mort.* 335, 344, 439, 442, 444; 1 *Jones on Mort.*, § 728; 2 *Id.*, §§ 1114, 1119.

And having received the entire amount of her mortgage, principal and interest, from the sale of the lands and the administrator of the mortgagor, she must account to plaintiffs for rents and profits received by her and not applied to her mortgage, upon the principle of subrogation. *McM. Eq.* 13; 1 *Hill. on Mort.* 338; 1 *Jones on Mort.*, § 725; 2 *Id.*, § 1118.

4. By every act of Ann D. Flinn she has claimed adversely to the heir-at-law—*first*, claiming the fee under the declaration of trust and independent of it; *second*, claiming as mortgagee while the mortgagor was out of possession; and again, claiming dower concurrent with her answer claiming to hold as heir-at-law. And, by all rules of equity, she is liable to account to the plaintiffs—the rule in equity being different from the rule of law in respect to the right of a junior mortgagee to claim an account

of rents and profits. 1 *Hill. on Mort.* 170, 326, 329, 464; 2 *Bail.* 103; 4 *Rich.* 516; 13 *S. C.* 174.

5. And this action is sufficiently formal for the recovery. It meets all necessary requirements; and all necessary parties are before the court. Ann D. Flinn brought herself into the cause, seeking of the court equitable relief. She had notice of our demand years before she abandoned the claim of holding adversely to the mortgagor, and she does not profess to have paid the incomes to the mortgagor. Her receipt of them makes her a trustee of a fund applicable to the mortgage creditors' claims. 1 *Hill. on Mort.* 446, 467, 469; 1 *Jones on Mort.*, § 775; 2 *Id.*, §§ 1115, 1516, 1517, 1523.

She voluntarily interposed the only obstacle to the plaintiffs' recovery of foreclosure six years before the sale was made; gets the interest on her mortgage debt that was running during that period; actually commits waste; and appropriates all incomes from the lands to her own use, without giving credit upon her mortgage. And she cannot be permitted in a Court of Equity to gain this double advantage, and inflict upon the plaintiffs double injury, by shifting positions and double resorts. 6 *Rich. Eq.* 308, 309; 1 *Hill. on Mort.* 223, 227, 230, 465; 1 *Jones on Mort.*, §§ 671, 684, 687, 696; 2 *Id.*, §§ 1120, 1121.

*Mr. R. W. Boyd,* contra.

April 18th, 1881. The opinion of the court was delivered by

McGOWAN, A. J. On April 23d, 1870, H. K. W. Flinn executed a mortgage of twenty-four hundred acres of land to the plaintiffs to secure a debt of $5500. In 1871 Ann D. Flinn, the wife of H. K. W. Flinn, having set up some claim to the land, was made a party to the complaint for foreclosure which had been instituted. A. F. Edwards held a prior mortgage, and he also was made a party. Pending action H. K. W. Flinn died, January, 1872, and the suit was continued against his administrator, T. George Dargan. Soon after the death of Flinn, Ann D. Flinn became the owner of the Edwards mortgage. The plaintiffs amended their complaint November 5th, 1873, *claiming of Ann D. Flinn rents and profits of the mortgaged premises.*

The case came up on appeal, and this court decided that the land mortgaged belonged to H. K. W. Flinn, the mortgagor, and decreed foreclosure against him ; but the right which had been set up for rents and profits from Mrs. Flinn was reserved. *Reeder & Davis* v. *Flinn*, 6 *S. C.* 242.

The sale under the decree of foreclosure was made December, 1877, and the proceeds of sale paid to Mrs. Flinn, the owner of the Edwards mortgage, but they were not sufficient to satisfy the mortgage. From the death of her husband, in 1872, Mrs. Flinn and her infant son continued to reside on the land and received the rents and profits thereof until the sale under the order of foreclosure, 1877, and the plaintiffs, junior mortgagees, claim that she should account for the rents and profits towards satisfaction of her mortgage. The case was heard by Judge Hudson, who decreed that Mrs. Flinn was not bound to account for the rents and profits prior to the sale under the order for foreclosure, and the appeal comes to this court upon the single question of her liability.

The points made, arising out of the fact that Flinn and his wife in the litigation claimed that the latter was really the true owner of the land mortgaged, will not be considered. Claims set up and not established cannot alter the rights of the parties. This court decided that the land belonged to H. K. W. Flinn, and had never been the property of his wife. That fixed the relative positions of the parties from the beginning, and their respective rights must be determined only upon that view. H. K. W. Flinn was the mortgagor in actual possession, and Ann D. Flinn was his wife, living with him until his death, in 1872. After his death she and her son simply remained as heirs-at-law of the deceased mortgagor. When there is no new entry, but the heir is in as of his ancestor's possession, the possession of the heir is that of the ancestor. *King* v. *Smith*, *Rice* 15; *Dillard* v. *Philson*, 5 *Strob.* 215. So that the single point is whether a mortgagor (or, after his death, his heirs) in possession of the mortgaged premises, is liable to the mortgagee for rents and profits upon a complaint for foreclosure which makes no allegation that the land is insufficient for his security without resort to the rents and profits, or that the mortgagor is insolvent, and

which contains no prayer for the appointment of a *receiver* or *other relief of that character*.

At the common law a mortgagee was, immediately after the execution of the mortgage deed, seized of an estate in fee, and the mortgagor was considered in the language of some of the cases as his tenant at will. The mortgagee was deemed the absolute legal owner, and had the right to enter, and could maintain a possessory action against the mortgagor. If there were covenants in the mortgage deed, by which the mortgagor was entitled to retain the possession, the Court of Equity would protect him in the enjoyment of such right.

But under our act of 1791 a mortgage in this state is a very different thing from the mortgage at common law. That act declares "that no mortgagee shall be entitled to maintain any possessory action for the real estate mortgaged, even after the time allotted for the payment of the money secured by mortgage is elapsed, but the mortgagor shall still be deemed owner of the land and the mortgagee as owner of the money lent or due, and shall be entitled to recover satisfaction for the same out of the land," &c. *Gen. Stat.* 536. The effect of this act was to change a mortgage from being a conveyance on condition to a mere lien as a security for a debt. *State* v. *Laval,* 4 *McC.* 340; *Mitchell* v. *Bogan,* 11 *Rich.* 703. It is not stated that the mortgage of plaintiffs has any special stipulation upon the subject of rents and profits. Assuming it to be in the usual form and subject to the act of 1791, we do not see upon what ground the plaintiffs can claim to have *any legal right* either to the possession of the prmises or rents and profits thereof before the sale under the decree in foreclosure. Such claim rests upon the right of entry and possession at common law, and, if allowed, would be in the very face of the act that " the mortgagor shall still be deemed owner of the land."

But it is urged that upon this subject the doctrine of equity is different, and that this is a proceeding in the nature of a bill in equity on the part of mortgages whose security is not adequate to make the mortgagor account for rents and profits as auxiliary to the land in paying the debt. The general rule certainly is that equity follows the law, and we suppose that the

authorities relied upon to support the alleged equity doctrine are taken from those states where the mortgage still retains all its common law characteristics. The case cited from our own reports of *Stoney* v. *Shultz*, 1 *Hill's Ch.* 499, was a case falling under the exception in the act of 1791, where "*the mortgagor was out of possession.*" Johnson, J., in delivering the opinion of the court, said : " I take it, therefore, as clear, that Shultz, *the mortgagor, being out of possession,* the rights and powers of Brooks as mortgagee, in respect to the purchases of the lots in possession under Shultz must be determined according to the rules of the common law, and according to that he had a right to receive and retain the rents, having given notice of the mortgage to the tenants in possession." It is true that in the case of Matthews *v.* Preston, note to *Boyce* v. *Boyce,* 6 *Rich. Eq.* 307, something is said which would seem to indicate that under some circumstances the Court of Equity might decree rents and profits in the land as incident to, and part of, the security given. The court says : " The mortgagee in this court [equity], claiming an account of the rents and profits must stand upon the general doctrine laid down by *Coote on Mort.* 342, that although in equity the mortgagor remains the actual owner of the land until foreclosure, entitling him while in possession to the receipt of the rents and profits without account, yet equity regarding the land, *with all its produce,* as a security for the mortgage debt will restrict the right of ownership within those bounds which may not operate to the detriment or injury of the mortgagee." Yet in the same case the view we entertain is expressed in terms which we are content to adopt. " The mortgagor in possession is not liable to the mortgagee on account of the rents. There is no case that goes so far, and the authorities establish a contrary doctrine, and I should have no difficulty in adopting the conclusion that the purchaser of the equity of redemption in possession occupies the same relations to the mortgagee and upon the same principle must be equally exempt. No tenancy in either case exists or can be implied. In such a case the rent as an auxiliary fund to aid in the satisfaction of the debt is beyond the reach of the mortgagee, though his security from the *corpus* of the estate may be inade-

quate.   At least it is so in the form of proceeding which has been adopted in this case."

*Jones on Mort*, § 771, states the principle as we understand it : " A mortgagee has no specific lien upon the rents and profits of the mortgaged land unless he has in the mortgage stipulated for a specific pledge of them as part of his security. He has no claim upon them until he has the right to take possession of the premises under his mortgage."

The Circuit decree is affirmed, and the appeal dismissed.

SIMPSON, C. J., and ALDRICH, A. A. J., concurred.